[No. 18533. *En Banc.* August 20, 1925.]

CITIZENS BANK & TRUST COMPANY, *Appellant,* v.
EVERBEST SHINGLE COMPANY, *Respondent.*[1]

CARRIERS (12, 14-2)—CONSTRUCTION AND OPERATION OF BILL OF
LADING—INDORSEMENT OR OTHER TRANSFER—ORDER BILL—COLLECTION
—NEGLIGENCE OF SHIPPERS. Casual information imparted in a con-
versation with a single officer of a bank as to a customer's general
purpose and methods in obtaining advances on drafts with bill of
lading or order bills, is not sufficient to put the bank upon notice
of the customer's intention, in a specific transaction a year or two
later, to retain title to and control over the shipment until the
purchase price was paid, even if the invoice had been silent on
the subject.

SAME (12, 14-2.) A shipper, obtaining an advance from a bank
on an order bill or draft with bill of lading attached, is guilty of
negligence in failing to disclose to the bank the purpose and intent
to retain title to and control over the shipment until payment
therefor, where there was no customer's draft presented, and no
request made for its preparation and forwarding with the bill of
lading attached, and the shipper wrote on the invoice "due on or
before sixty days after shipment;" so that, on assignment of the
invoice and bill of lading to the bank as security for the advances
to the shipper, the latter's instrument in the form of a customer's
draft, with reference to the car number and initials directed to the
consignee, but containing, in addition, the shipper's guarantee of
payment within ninety days, with interest, was not a draft intended
to be presented to the consignee, but was primarily intended only
as evidence of the bank's advances, which must be repaid, not-
withstanding the failure of the bank to collect for the shipment
before delivery to the consignee.

Appeal from an order of the superior court for
Snohomish county, Alston, J., entered August 3, 1923,
upon findings in favor of the defendant, in an action
on contract, tried to the court. Reversed.

*W. P. Bell,* for appellant.

*Stiger & Kaune,* for respondent.

*Kerr, McCord & Ivey, amici curiae.*

[1]Reported in 238 Pac. 644.

TOLMAN, C. J.—Appellant brought this action as plaintiff to recover upon what it is pleased to call a shipper's note.

The case was tried to the court, sitting without a jury, and from a judgment denying it relief, the plaintiff has appealed.

The facts, while seemingly simple and in the main undisputed, present a question to be here determined as a question of fact which we have found extremely difficult. There is no serious dispute as to the law applicable, and the final results depend upon the inferences to be drawn from admitted or established facts. Hence the facts must be understood clearly so that correct inferences may be drawn.

A year or two before the occurrence of the events hereinafter narrated, respondent, through its managing officer, approached the cashier of the appellant bank, stating, in effect, that his company had theretofore sold its product through brokers and was about to change its policy in that respect, to some extent at least, and inquired how shipments could be made to purchasers without the intervention of a broker and how bank advances on such shipments might be obtained and both the bank and the shipper be protected.

The cashier explained the usual custom, stating that respondent should ship to itself at the point of delivery, obtain from the railroad company an order bill of lading in its own name, with a notation thereon to notify the purchaser, and forward through a bank a customer's draft with invoice and bill of lading attached; so that the purchaser would be obliged to pay the draft before obtaining possession of the bill of lading, which would entitle him to take delivery of the car. It was further explained that the bank would, if desired, loan up to ninety per cent of the estimated net value of the shipment and that, in such cases, the

invoice should be in duplicate, be assigned to the bank; and if the goods were to be delivered f. o. b. point of delivery, the draft, which would be, or might be, drawn by the bank, should bear a notation that the receipted freight bill would be accepted as so much cash in payment.

Respondent's witness testifies that all of this was, by the cashier in his presence, explained to the assistant cashier of the bank, whose duty it was to attend to such transactions; but this is denied by both of the bank's officers. Whatever may be the fact as to that, without any intervening conversation on the subject with either of the bank's officers, and without any reference to this previous conversation with the cashier, on August 4, 1920, respondent's manager, having, on July 29 preceding, shipped a carload of shingles to Marion, La., and obtained from the railroad company an order bill of lading therefor, went to the bank and delivered to its assistant cashier (the cashier being absent) the order bill of lading and an invoice in duplicate, the invoice bearing the notation: "Due on or before sixty days from date of shipment. Paid freight bill taken in payment after deducting taxes;" and evidently informed the bank's officer that the respondent wished a loan or advance against the shipment. The officer, by rubber stamp, put upon the invoice:

"For value received this invoice and bill of lading is assigned to the Citizens Bank & Trust Company, of Everett, Washington, to whom payment is to be made direct,"

and this was signed in respondent's name by its manager. The instrument sued on was also then prepared and signed. It is in the form of a customer's draft, with a reference to the car number and initials, is directed to the purchaser at Marion, La., but, in addition

19—135 WASH.

to the terms customary in an ordinary draft, has the following:

"For value received, we hereby guarantee the payment of this draft within ninety days from this date with interest thereon at eight per cent per annum until paid."

Credit was, by the bank, given to the respondent for the amount of this instrument, be it draft or shipper's note; respondent's manager did not then or at any other time give any direction as to the holding of the bill of lading until payment was made by the purchaser; said nothing as to how he wished the collection made; and did not call attention to the fact that the bill of lading was an order bill, though that fact was self-evident by the most casual scrutiny, as it appears all order bills are printed on yellow paper to make them readily distinguishable from straight bills, which are printed on white paper. Notwithstanding this fact, the assistant cashier testifies that he did not notice the bill of lading and did not know it was an order bill.

The bank retained the shipper's note or draft which, it should be noted, was for the amount borrowed from the bank by the respondent, and not for the amount the purchaser of the shingles was to pay therefor; and sent the bill of lading, with the duplicate assigned invoice, direct to the purchaser, with a form letter calling attention to the assignment stamped on the invoice and requesting settlement to be made direct to it. Nothing was known by the respondent as to these actions by the bank until September 16 following, when more or less accidentally the facts developed. No very vigorous protest was made, but we regard that as immaterial, since it now appears that the shingles were delivered to the purchaser, by reason of his possession of the bill of lading, on September 9, or before respondent knew the bank had parted with the bill of lading. The pur-

chaser made default, the goods covered by the bill of lading have never been paid for, and the bank now seeks recovery of its advances and interest.

The record is replete with what each actor thought or intended; but undisclosed intentions cannot bind the opposing party, and we therefore must consider only such intent as is to be inferred from the acts shown by the record.

The trial court correctly interpreted the law applicable. In a carefully-prepared memorandum opinion, he cites the statutes, Rem. Comp. Stat., §§ 3651 and 3655 [P. C. §§ 432, 436], which read:

"A bill in which it is stated that the goods are consigned or destined to the order of any person named in such bill, is a negotiable or order bill.

"Any provision in such a bill that it is non-negotiable shall not affect its negotiability within the meaning of this act." (§ 3651.)

"The insertion in a negotiable bill of the name of a person to be notified of the arrival of the goods shall not limit the negotiability of the bill, or constitute notice to a purchaser thereof of any rights or equities of such person in the goods." (§ 3655.)

And he might well have cited § 3687 [P. C. § 468], also, a part of the uniform bill of lading act, which reads:

"Where the seller of goods draws on the buyer for the price of the goods and transmits the draft and a bill of lading for the goods either directly to the buyer or through a bank or other agency, unless a different intention on the part of the seller appears, the buyer and all other parties interested shall be justified in assuming:

"(a) If the draft is by its terms or legal effect payable on demand or presentation or at sight, or not more than three days thereafter (whether such three days be termed days of grace or not), that the seller intended

to require payment of the draft before the buyer should be entitled to receive or retain the bill.

"(b) If the draft is by its terms payable on time, extending beyond three days after demand, presentation or sight (whether such three days be termed days of grace or not), that the seller intended to require acceptance, but not payment of the draft before the buyer should be entitled to receive or retain the bill.

"The provisions of this section are applicable whether by the terms of the bill the goods are consigned to the seller, or to his order, or to the buyer, or to his order, or to a third person, or to his order."

These quoted sections of the statute are but enactments of the general rule, and contain all of the law applicable to this case. In order to apply it correctly, certain inferences must be drawn. The bill of lading itself gave notice, to some extent at least, that the shipper desired and intended to retain title to and control over the shipment until the purchase price was paid, and had the invoice been silent upon the subject, or had it stated, as it should, that the amount thereof would be due upon the arrival of the shipment, the bank's liability would be clear. Even had respondent's manager obtained his information and directions from the officer of the bank who handled this particular transaction within a reasonable time before, we might still hold the bank liable. But where, as here, the information obtained from the bank was casual in its nature, with no particular and specific sale then in view, and bearing in mind that, even so, the conversation at which this information was imparted, according to the testimony of respondent's manager, took place a year or two before the actual transaction, it would be too rigid a rule to hold that, by such a conversation with a single officer of the bank, every other officer of the same bank at such a remote time would be bound at his peril to know that respondent was attempting to

act upon the previously imparted information. So that, the attention of the bank's officers not having been called to respondent's purpose and intention to retain title until payment was made; no customer's draft having been presented with the papers; and no request having been made for the preparation of such customer's draft by the bank and its forwarding with the bill of lading attached;—we cannot hold that the negligence, if such it be, of the assistant cashier in failing to note that the bill of lading was an order bill, was the cause of the loss or was in any wise sufficient to place liability for the loss upon the bank.

Upon the other hand, while we appreciate that respondent's manager no doubt had no purpose whatever of relinquishing control over the shipment, that in his own mind he was relying upon what he remembered of his conversation with the cashier a year or two before, and intended that the transaction should be so handled that the purchaser could not obtain the shipment until he had first paid the purchase price; yet respondent's error in not disclosing these intentions to the officer of the bank then handling the transaction, and its still more glaring error in writing upon the invoice, "Due on or before 60 days from date of shipment," were, we think, the proximate cause of the loss. We must hold that the instrument upon which this action is based was not a draft intended to be presented to the purchaser, but was primarily intended as evidence of the bank's advances to the respondent. It was not for the amount which the purchaser was bound to pay, and both its face and the indorsements which it bears upon the back clearly so indicate. That a proper draft was not drawn upon the purchaser was due, we think, wholly to respondent's then failure to make its intention known to the officers of the bank; and with the

attention that respondent gave to the matter, even if the bank's officers had drawn a customer's draft on the purchaser from the only information then before them, which was all on the face of the invoice, their duty would have been to draw such draft due in sixty days from the date of shipment and to have delivered the bill of lading upon acceptance of the draft as provided by our statute; and from what appears in the record, the purchaser's acceptance of the draft would have benefited no one.

The trial court gave great care and attention to the trial of this case. As we have already said, he correctly interpreted the law; but we are reluctantly compelled to disagree with the inferences which he drew from the established facts.

The judgment appealed from will be reversed, with directions to enter judgment in favor of the appellant for the sum of $900, with interest at eight per cent per annum from August 4, 1920, and $132.25, with interest at six per cent per annum, from December 3, 1920.

Reversed and remanded.

HOLCOMB, PARKER, MACKINTOSH, MITCHELL, MAIN, BRIDGES, and ASKREN, JJ., concur.